# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

**PHI HEALTH, LLC**

    Plaintiff,

       v.

**UMR, INC. AND FOUNTAIN COUNTY,**

    Defendants.

Case No. 1:26-cv-1577

---

## COMPLAINT

---

Plaintiff PHI Health, LLC ("PHI") files this Complaint against Defendants UMR, Inc. ("Plan Administrator") and Fountain County ("Sponsor") for the failure to pay an overdue award issued pursuant to the No Surprises Act ("NSA").

### I. INTRODUCTION

1. Defendants are violating the NSA. Congress created the Independent Dispute Resolution ("IDR") process as a streamlined method to resolve payment disputes between out-of-network providers of air-ambulance services and commercial health insurers.[1]

2. The IDR process is an arbitration in which a private arbitrator (known as an "IDR entity") issues a written determination selecting the amount due to the provider by a patient's commercial health insurer.

---

[1] This Complaint uses the shorthand "commercial health insurer" to reference all types of payors covered by the No Surprises Act, including individual health insurance issuers; group health insurance issuers; and self-insured group health plans, including employee welfare benefit plans subject to the Employee Retirement Income Security Act of 1974 ("ERISA").

v1

3.     The NSA mandates that IDR determinations "shall be binding upon the parties" to the dispute and that payment by the plan or issuer "shall be made directly to the nonparticipating provider not later than 30 days" after the determination. These provisions create a money-mandating obligation and a right for providers to enforce that obligation.

4.     Defendants have refused to comply with this mandatory obligation. More than 30 days have passed since issuance of the IDR determinations at issue here; yet Defendants have not paid.

5.     Without judicial enforcement, these "binding" awards would be rendered meaningless to providers, and Defendants could ignore their statutory payment obligation.

6.     This case seeks only enforcement—not review—of binding IDR determinations under the NSA, or alternatively, confirmation under the FAA and/or Indiana Uniform Arbitration Act. PHI does not ask this Court to revisit the merits of any IDR award.

7.     PHI therefore brings this action, pursuant to the NSA, the Federal Arbitration Act ("FAA"), and the Indiana Uniform Arbitration Act, seeking (a) entry of judgment confirming the IDR Award; (b) an award to Plaintiff of $19,109.12 (the "IDR Award Balance"); (c) equitable relief enforcing such obligations; and, together with such other relief as the Court deems appropriate.

## II.  PARTIES

8.     Plaintiff PHI Health, LLC is a limited liability company organized under the laws of the State of Louisiana and headquartered in Tempe, Arizona.

9.     UMR, Inc. (the "Plan Administrator") is a corporate entity organized under the laws of the State of Delaware and authorized to conduct business in the State of Indiana. Plan Administrator, upon information and belief, is the third-party administrator and a fiduciary of Defendant Fontain County, and is therefore the authorized agent of each and every other

Defendant named in this complaint. Plan Administrator's receipt of notice of this lawsuit and the underlying arbitration was valid notice to all other Defendants, and Plan Administrator's participation in the IDR process was on behalf of all other Defendants. Plan Administrator may be served with process by serving its registered agent for service, United Agent Group Inc., 8520 Allison Pointe Blvd., Suite 220, Indianapolis, Indiana 46250.

10.    Defendant Fountain County Health and Welfare Plan (precise legal name unknown) (the "Plan") is an employee welfare benefit plan. The IDR determination at issue in this case concern out-of-network air-ambulance services provided by PHI to one or more participants in or beneficiaries of the Plan. The Plan may be served with process by serving the registered agent of Fountain County, the Board of Commissioners, at 301 4th Street, Covington, Indiana 47932 and County & Council Attorney Ethan Myers at 316 Liberty Street, Covington, Indiana 47932. The Plan is a proper defendant and may be sued in its own name pursuant to 29 non-profit religious organization U.S.C. § 1132(d).

11.    Defendant Fountain County ("Sponsor") is a political subdivision organized under the laws of the State of Indiana with its principal place of business in Covington, Indiana. On information and belief, Sponsor serves as a plan sponsor for the Plan, which is an employee welfare benefit plan for Sponsor's employees and their dependents.  Sponsor may be served with process by serving the registered agent of Fountain County, the Board of Commissioners at 301 4th Street, Covington, Indiana 47932 and County & Council Attorney Ethan Myers at 316 Liberty Street, Covington, Indiana 47932.

## III.  JURISDICTION AND VENUE

12.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law, including the NSA, 22 U.S.C. § 300gg-111, and 42 U.S.C. § 300gg-112, which mandate the payment of IDR awards within thirty days of issuance.

13.     This Court has supplemental jurisdiction over Plaintiff's claims under Indiana law pursuant to 28 U.S.C. § 1367.

14.     The Court has personal jurisdiction over Plan Administrator because Plan Administrator regularly conducts business in this state with the Sponsor and the Plan, who are formed under the laws of the State of Indiana and have their principal place of business in Covington, Indiana.

15.     The Court has personal jurisdictional over Sponsor, and therefore the Plan, because Sponsor is an Indiana government entity.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Plan is administered in this District and/or the alleged breaches giving rise to Plaintiff's claims occurred in this District through Plan Administrator's administration, processing, and nonpayment of claims and IDR awards on behalf of the Plan here. In addition, venue is proper because Defendant Plan Administrator resides and/or may be found in this District, and the Plan and Sponsor may be found in this District through their contacts with and direction and/or control over claims administration activities conducted in this District on their behalf.

## IV.  <u>FACTUAL BACKGROUND</u>

### A.     The Importance of PHI's Service.

17.     The air ambulance industry plays an integral role in the American healthcare system, and PHI provides an essential service for many Americans. Air ambulances serve as a lifeline connecting critically ill and injured patients to healthcare, particularly in rural American communities where, between 2010 and 2021, at least 106 hospitals have closed.[2]

---

[2] S. McCarthy, MD, *et al*., *Impact of Rural Hospital Closures on Health-Care Access*, J. Surgical Research, Feb. 2021 (258), pp. 170-178.

18. Air ambulances transport trauma, stroke, heart attack, and burn patients and other emergent cases requiring critical care. Time is of the essence during air medical transport. By reaching the patient quickly (to provide emergency interventions) and then transporting that patient quickly to a qualified treatment facility, air ambulances save and improve lives.[3]

19. The delivery of on-demand, life-saving air ambulance services is expensive and requires substantial investments in specialized aircraft, air bases, technology, personnel, and regulatory compliance systems.

20. PHI is critically dependent on payments from commercial health insurers derived from the NSA's IDR process. PHI provides just one service: emergency medical transport. The majority of the patients transported by PHI are covered by Medicare or Medicaid. Those government programs' reimbursements typically do not even cover PHI's costs of providing the services. PHI is therefore critically dependent upon the payments it receives from commercial health insurers, especially the payments now governed by the NSA.

**B.    Background on the No Surprises Act ("NSA").**

21. The NSA became effective on January 1, 2022.

22. The NSA imposes a federal obligation on commercial health insurers to pay out-

---

[3] *See, e.g.*, O. Lapidus *et al., Trauma patient transport to hospital using helicopter emergency medical services or road ambulance in Sweden: a comparison of survival and prehospital time intervals,* Scandinavian Journal of Trauma Resuscitation and Emergency Medicine (2023), vol. 31, p.101, https://perma.cc/WGP8-CSXC (based on study of medical records of 74,032 patients receiving emergency medical transports in Sweden between 2012 and 2022, authors concluded that "HEMS [helicopter-transported] patients had significantly lower mortality compared to patients transported by [ground] EMS"); D. Michaels, *et al., Helicopter versus ground ambulance: review of national database for outcomes in survival in transferred trauma patients in the USA,* Trauma Surgery & Acute Care Open, Mar. 6, 2019, https://perma.cc/KU8E-YLVE (based on analysis of 469,407 trauma patients receiving ground or air transport in the United States in 2014, and after adjusting for age, gender, and Injury Severity Score (ISS), the authors concluded that "trauma patients who were transferred by helicopter were 57.0% less likely to die than those transferred by GA [ground ambulance]").

of-network providers for certain air ambulance services. The commercial health insurers must pay the applicable "out-of-network rate" due for the service directly to the provider, less any cost-sharing amount owed by the patient.

23.     Pursuant to the statute, a group health plan or insurer has 30 days from which the bill for a covered service is transmitted by the provider to pay or deny the claim. 42 U.S.C. § 300gg-111(b)(1)(C); 42 U.S.C. § 300gg-112(a)(3). If initial payment is too low, the provider may initiate an "open negotiation period" to attempt to negotiate a higher amount. 42 U.S.C. § 300gg-111(c)(1)(A); 42 U.S.C. § 300gg-112(b)(1). If the negotiations fail, the provider may initiate the IDR process. 42 U.S.C. § 300gg-111(c)(1)(B); 42 U.S.C. § 300gg-112(b)(2).

24.     The IDR process is a mandatory arbitration process used to determine pricing for out-of-network air ambulance transports of patients who are covered by commercial health insurers.

25.     Pursuant to the NSA, the U.S. Departments of Labor, Health and Human Services, and the Treasury (the "Departments") issued regulations to implement the IDR process. The Department or Departments with regulatory authority over a specific air ambulance transport and subsequent IDR dispute depends on the type of health insurance or group health plan at issue.

26.     The IDR process is baseball-style arbitration. It requires each party to submit proposed offers of payment for the services at issue to a third-party IDR entity. 42 U.S.C. § 300gg-111(c)(5); 42 U.S.C. § 300gg-112(b)(5). The IDR entity considers both proposed offers and several statutory factors (about which the parties may submit information in support of their offers) and then must select one of the parties' offers as the payment amount owed for the services at issue. *Id.*

6

27.     The NSA makes "binding" the IDR entity's determination. The commercial health insurer must make any additional "payment required" by the determination "directly to the nonparticipating provider **not later than 30 days after** the date on which such determination is made" by the IDR entity. 42 U.S.C. § 300gg-111(c)(5); 42 U.S.C. § 300gg-112(b)(5) (emphasis added).

28.     Once a certified IDR entity issues a determination, the NSA affords the losing party only a narrow opportunity to challenge the award on the bases enumerated in 9 U.S.C. § 10(a)(1)-(4).  42 U.S.C. § 300gg-111(c)(5)(E); 42 U.S.C. § 300gg-112(b)(5). Any other attempt to challenge the award is barred. *Id*.

29.     In enacting the NSA, Congress fundamentally altered the manner in which providers may obtain payment for covered services. Rather than permitting providers to pursue their traditional collection and reimbursement remedies, Congress required providers and payors to resolve payment disputes through a mandatory federal IDR process and made the resulting determinations binding. Congress further required payors to satisfy the payment amount determined through that process within thirty days, subject only to the limited vacatur grounds incorporated from the Federal Arbitration Act. The statute thus replaces providers' traditional enforcement mechanisms—including their right to bill patients for the full cost of providers' services—with a mandatory federal dispute-resolution framework that culminates in a binding payment obligation.

30.     The NSA's restrictions on judicial *review* apply only to efforts to vacate or otherwise challenge the validity of an IDR determination, as noted above. Nothing in the statute extends those limitations to actions seeking to enforce compliance with a final and binding IDR determination.

31. Although the Departments are authorized to provide systemic oversight of the statute—including data collection, audits, rulemaking, and the imposition of modest civil monetary penalties payable to the government to deter systemic noncompliance—they lack authority to compel payment of individual IDR awards to prevailing providers. The NSA provides no administrative mechanism through which a prevailing provider may compel payment of an individual IDR award, leaving judicial enforcement as the only means of effectuating the statute's mandatory payment obligation.

32. Absent judicial enforcement, a losing payor could disregard a binding IDR determination without satisfying the underlying payment obligation, rendering Congress's mandatory payment requirement effectively unenforceable. The NSA's text and structure do not permit that result; rather, they require that binding IDR determinations be enforceable so that prevailing providers receive the payments to which they are entitled.

**C.    PHI Filed Arbitration and Prevailed, Yet Defendants Refuse to Pay.**

33. The air ambulance services provided by PHI were air ambulance services furnished as a nonparticipating provider to a participant, beneficiary or enrollee ("Patient") of a group health plan or commercial health insurer. Those services are "qualified IDR items and services" under 45 C.F.R. § 149.510(xi)(A), and they qualify for mandatory payment under the NSA, including 42 U.S.C. § 300gg-111(a)(1); and 42 U.S.C. § 300gg-112(a).

34. Defendants and Patient received the benefit of PHI's air ambulance services during a time of emergent medical need. In many situations, lives were saved or more serious conditions avoided (and thus the costs associated therewith).

35. PHI followed industry standard billing process for billing Defendants for these transports.

36.    In response, Plan Administrator made low initial payments to PHI for the two service codes billed for the transport.

37.    Because the initial payments were deficient, PHI turned to the dispute resolution process set forth in the NSA.

38.    PHI first timely initiated the open negotiation process on May 19, 2025. The parties did not agree to a payment rate for PHI's services during the open negotiation period.

39.    When open negotiations failed, PHI timely initiated IDR proceedings by submitting notices of initiation through the federal IDR portal for the transport and service codes at issue. IDR was initiated on July 3, 2025.

40.    During the IDR process, PHI timely submitted its offers for payment, as well as information in support of those offers.

41.    Defendants received notice of the related IDR proceeding, submitted an offer and supporting documentation, and participated without objecting to the dispute's eligibility for the federal IDR process.

42.    The certified IDR entity (*i.e.*, arbitrator) then issued a written determination, which resulted in PHI being owed additional payments for the out-of-network services (the "IDR Award"), a copy of which is attached as Exhibit A.

43.    The IDR Award is final and binding. PHI is not aware of Defendants seeking vacatur, modification, or correction of the IDR Award identified in Exhibit A.

## V.  CLAIMS

### Count 1: Confirmation of IDR Award Under the NSA
### (42 U.S.C. § 300gg-111(c)(6); 42 U.S.C. § 300gg-112(b)(6))

44.    PHI incorporates by reference the allegations of the preceding paragraphs.

45.    The NSA creates enforceable rights for providers like PHI. The NSA uses clear,

mandatory, rights-creating language, including that a determination of a certified IDR entity "*shall be binding upon the parties involved*" and that payment "*shall be made directly to* [PHI] *not later than 30 days after* the date on which such determination is made" by the IDR entity. 42 U.S.C. § 300gg-111(c)(6); 42 U.S.C. § 300gg-112(b)(6) (emphasis added).[4] These provisions impose a specific money-mandating obligation to pay a sum certain to providers by a date certain. PHI, as a provider, is within the class of entities the NSA is designed to protect.

46.    Congress specified that a provider is owed a specific amount (as determined by the certified IDR entity), from a specific payor (the plan or insurer that participated in the IDR process), by a date certain (no later than 30 days after the determination). Statutes that impose such mandatory payment obligations have long been understood to create enforceable rights and remedies, particularly where, as here, the obligation is fixed, final, and non-discretionary. *See, e.g., Maine Cmty. Health Options v. United States*, 590 U.S. 296, 324–28 (2020) ("Statutory 'shall pay' language often reflects congressional intent to 'create both a right and a remedy'").

47.    These provisions are phrased in explicit, rights-creating terms and are unmistakably focused on the class of entities Congress intended to benefit—out-of-network emergency providers that prevail in the IDR process. They satisfy the standard articulated in *Health & Hospital Corp. of Marion County v. Talevski*, 599 U.S. 166 (2023), and *Gonzaga University v. Doe*, 536 U.S. 273 (2002), for the creation of enforceable federal rights.

48.    This action does not seek judicial *review* of the merits of any IDR determination, which Congress limited to the narrow grounds for vacatur under the Federal Arbitration Act. 42 U.S.C. § 300gg-111(c)(5)(E)(i). Instead, this action seeks judicial *enforcement* of a binding award. Judicial enforcement is categorically different from judicial review in that it does not seek to

---

[4] And, as applicable, 26 U.S.C. § 9817.

disturb the written determination, and judicial enforcement is necessary to give effect to Congress's command that binding determinations be timely paid. *PHI Health, LLC v. Optimum Choice, Inc. d/b/a United Healthcare,* No. 25-CV-2320-ABA, 2026 WL 850453, at *9 (D. Md. Mar. 27, 2026); *see also Richard Agag, MD v. Cigna Health & Life Ins. Co.*, No. 3:25-CV-00498 (SRU), 2026 WL 1021213, at *13 (D. Conn. Apr. 15, 2026).

49.    Absent judicial enforcement, the NSA's declaration that IDR determinations are "binding" and "shall" be paid would be rendered precatory rather than mandatory, contrary to Congress's express design.

50.    No federal agency is authorized by the NSA to compel payment of individual IDR awards through administrative proceedings. Although the Departments were directed under the NSA to engage in administrative rulemaking, to conduct audits of payors' "qualifying payment amount" calculations, and to select and certify IDR arbitrators, the NSA *does not* direct or empower these agencies to collect, adjudicate, or compel payment from insurers to providers. Any limited authority that individual Departments have to penalize specific types of commercial health plans for noncompliance is insufficient to ensure full and timely payment to providers.

51.    Absent judicial enforcement, Defendants could ignore binding IDR determinations with impunity, rendering Congress's carefully constructed dispute-resolution framework meaningless. *PHI Health*, 2026 WL 850453, at *8; *Guardian Flight LLC v. Aetna Life Ins. Co.*, 789 F. Supp. 3d 214, 227–29 (D. Conn. 2025); *Richard Agag, MD*, 2026 WL 1021213, at *13.

52.    In the NSA, Congress prohibited providers from balance billing patients and extinguished common-law and state-law avenues for recovery. The IDR process and the mandatory payment obligation that follows a binding determination are the exclusive means by which providers may obtain compensation. It is inconceivable that Congress intended to strip

providers of all alternative remedies while simultaneously leaving prevailing providers without any mechanism to enforce binding federal payment determinations.

53. PHI thus has a right under the NSA to judicial enforcement of IDR awards that commercial health insurers fail to pay within 30 days.

54. More than 30 days have passed since the IDR Award was issued, and PHI has not received the payment due on that award.

55. Defendants have not filed suit to vacate the IDR Award pursuant to the limited grounds authorized by statute; they simply have not paid the award at all.

56. The amounts owed on the unpaid, partially paid, or late-paid award plus prejudgment and post-judgment interest should be issued as a final judgment.

### Count 2: Confirmation of IDR Award Under Federal Arbitration Act
### (9 U.S.C. §§ 1, *et seq.*)

57. PHI incorporates by reference the allegations of the preceding paragraphs.

58. The IDR process constitutes arbitration within the meaning of the Federal Arbitration Act.

59. Defendants agreed to binding dispute resolution. For example, Defendants made an offer on the Explanation of Benefits for the services at issue that PHI could utilize the federal IDR process to determine the amount due to PHI for its out-of-network services (which PHI accepted by initiating the IDR process). Defendants then participated in the resulting IDR process by submitting their own offer for the amount of payment due to PHI and/or information in support of its offer. Defendants also voluntarily provided insurance coverage subject to the NSA, knowing that doing so required participation in the federal IDR process; and it thereby further consented to participate in the federal IDR process.

60. In the NSA, Congress also indicated that IDR written determinations are to be

treated as arbitration awards. For example, Congress mandated that such an award could only be vacated on the grounds set forth in Paragraphs 1 through 4 of Section 10 of the Federal Arbitration Act.

61.    The certified IDR entities acted as neutral adjudicators with respect to the IDR Award.

62.    The IDR Award is valid arbitration award that has not been vacated or set aside by any authority.

63.    Confirmation is not "judicial review" but rather entry of the award previously rendered. The IDR Award should thus be confirmed by judgment of this Court pursuant to the FAA, 9 U.S.C. § 9.

<b><u>Count 3: Violation of the Indiana Uniform Arbitration Act</u></b>

64.    PHI incorporates by reference the allegations of the preceding paragraphs.

65.    The Independent Dispute Resolution proceedings conducted pursuant to the No Surprises Act constitute arbitration proceedings resulting in final and binding awards.

66.    Pursuant to Ind. Code § 34-57-2-12, upon application of a party, the Court shall confirm an arbitration award unless grounds are urged for vacating, modifying, or correcting the award under Ind. Code § 34-57-2-13 or § 34-57-2-14.

67.    The IDR Award described herein is a final and binding arbitration award within the meaning of the Indiana Uniform Arbitration Act.

68.    No grounds exist for vacating, modifying, or correcting the IDR Award.

69.    Confirmation of the IDR Award necessitates a money judgment in PHI's favor in the total amount that Defendants are obligated to pay to PHI, namely, the IDR Award Balance.

<b>VI.  <u>JURY TRIAL DEMAND</u></b>

70.    PHI demands a trial by jury.

13

## VII.  <u>PRAYER FOR RELIEF</u>

WHEREFORE, PHI respectfully prays for judgment against Defendants for the following damages and relief:

1.   An award of damages in the amount of the outstanding balance owed on the IDR Award (the "IDR Award Balance");

2.   Pre-judgment and post-judgment interest on all amounts awarded, including compensation for the time value of funds wrongfully withheld;

3.   Reasonable attorneys' fees and costs of suit, to the extent permitted by law;

4.   Award of all additional damages available under applicable law;

5.   Entry of an order confirming the IDR Award pursuant to the Federal Arbitration Act and/or applicable Indiana law;

6.   Equitable relief requiring Defendants to pay the outstanding IDR Award Balance;

7.   Prospective equitable relief requiring Defendant to comply with the No Surprises Act, including timely payment of all future IDR determinations within thirty (30) days unless timely vacated, and, where necessary, narrowly tailored reporting or compliance measures to ensure adherence to federal law;

8.   Such other and further legal and equitable relief as the Court deems just and proper.

Respectfully submitted,

SNYDER MORGAN & KUCHMAY LLP

By: */s/ Jason M. Kuchmay*
Jason M. Kuchmay, #20974-02
4211 Clubview Drive
Fort Wayne, Indiana 46804
Telephone: 574/457-3300
jmk@smk.law
Attorney for Plaintiff